UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEROME R. JOHNSON,

                    Plaintiff,

v.                                                                      1:13-CV-1072
                                                                        (GTS/CFH)
JACOB J. LEW, Sec'y, Dep't of Treasury, Internal
Revenue Serv.,[1]

                    Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

JEROME R. JOHNSON
  Plaintiff, *Pro Se*
28 First Street
Albany, NY 12210

HON. GRANT C. JAQUITH                        KAREN LESPERANCE, ESQ.
Acting United States Attorney for the N.D.N.Y.    Assistant United States Attorney
  Counsel for Defendant
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY 12207

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this employment discrimination action filed *pro se* by

Jerome R. Johnson ("Plaintiff") against Jacob J. Lew ("Defendant"), are Defendant's motion for

summary judgment pursuant and Plaintiff's motion for summary judgment.  (Dkt. Nos. 64, 65.)

For the reasons set forth below, Defendant's motion is granted, and Plaintiff's motion for

summary judgment is denied.

_____

        [1]        Because Steven T. Mnuchin is now the Secretary of the Treasury, the Clerk of the
Court is directed to substitute him for Jacob J. Lew as the Defendant in this action, pursuant to
Fed. R. Civ. P. 25(d).

# I.    RELEVANT BACKGROUND

## A.    Plaintiff's Second Amended Complaint

Generally, liberally construed, Plaintiff's Second Amended Complaint alleges as follows. (Dkt. No. 55 [Second Am. Compl.].)[2] Plaintiff worked as an Individual Taxpayer Advisory Specialist ("ITAS") with the Internal Revenue Service's ("IRS") Wage & Investment ("W&I") Field Assistance Office in Albany, New York. (*Id.*) In or around 1996, Plaintiff submitted a suggestion to his supervisor, Patricia Rafferty, the purpose of which was "to provide short term and long term recruitment of low income and minority students affiliated through the mayors [*sic*] summer youth program and Albany high school [*sic*] in Albany, New York." (*Id.* at 2.)[3] At some point in time, Plaintiff "also submitted his suggestion in his capacity as Black Employment Program Manager" to the "EEO Director," Sharon Floyd, who is a white female. (*Id.*) Ultimately, "Floyd implemented Plaintiff['s] suggestion in Buffalo, New York," in conjunction with the Volunteers in Service to America ("VITA") program. (*Id.*) Moreover, "Floyd and other IRS employee[s] implemented the suggestion" at Catholic High School in Troy, New York. "EEO awards" were given to "them" for this suggestion, but Plaintiff was not recognized, awarded, or compensated for his suggestion; rather, at some point in time, Plaintiff was "terminated . . . from his position as Black Employment Program Manager." (*Id.*)

---

[2]    Although this document is titled "MOTION TO AMEND COMPLAINT," the Court construes it to be Plaintiff's Second Amended Complaint. In a Memorandum Decision and Order, U.S. Magistrate Judge Christian F. Hummel granted in part Plaintiff's motion to amend his Amended Complaint. (Dkt. No. 52.)

[3]    Page citations to Plaintiff's Second Amended Complaint refer to the pagination generated by CM/ECF, the Court's electronic filing system.

Similarly, in 2002, Plaintiff submitted a "suggestion award proposal," suggesting that the IRS create "an outreach program in neighborhood health centers across the country" to help low-income citizens determine whether they were eligible for an earned income tax credit. (*Id.* at 4.) The IRS "used [Plaintiff']s suggestion but denied it," and Plaintiff filed a grievance alleging that he should have been awarded a portion of the savings that accrued to the IRS, as provided for in the "2001 Suggestion Program Memorandum." (*Id.*) The IRS asserted that no monetary savings actually accrued "from the suggestion," but offered Plaintiff $700 in settlement of his grievance (which Plaintiff accepted). (*Id.*)

Additionally, Defendant retaliated against Plaintiff for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), when, on September 29, September 30, October 1, October 4, and October 7, 2010, it denied his requests for Leave Without Pay ("LWOP"), and charged him with being Absent Without Leave ("AWOL"). (*Id*. at 2-3.)

Based on these factual allegations, Plaintiff's Complaint asserts the following claims against Defendant: (1) a claim of race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; (2) a claim of gender discrimination in violation of Title VII; (3) a claim of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.; and (4) a claim of retaliation in violation the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16. (*Id*.)

Familiarity with the factual allegations supporting the claims in Plaintiff's Second Amended Complaint (as well as the procedural history of this case) is assumed in this Decision and Order, which is intended primarily for the review of the parties.

**B.  Undisputed Material Facts on Defendant's Motion for Summary Judgment**

Before reciting the facts material to Defendant's motion for summary judgment, a few comments are appropriate regarding Plaintiff's response to Defendant's motion.  In support of its motion, Defendant filed a statement of material facts pursuant to Local Rule 7.1(a)(3) of the Court's Local Rules of Practice ("Rule 7.1 Statement").  (Dkt. No. 64, Attach. 3.)  Plaintiff's response thereto does not comply with Local Rule 7.1(a)(3) of the Court's Local Rules of Practice because it does not "mirror" Defendant's statement of material facts "by admitting or denying Defendant's assertions in matching numbered paragraphs," nor does it support any denials therein with specific citations to the record.  N.D.N.Y. L.R. 7.1(a)(3).  Rather, in response to Defendant's motion, Plaintiff has filed a single document, titled "Statement of Opposition to Defendant's Motion for Summary Judgment," which contains both his legal arguments and his responses (to the limited extent that he does respond) to Defendant's Rule 7.1 Statement.  (Dkt. No. 67 [Plf.'s Opp'n to Def.'s Mtn.].)  The Court notes that Plaintiff received a copy of the Court's *Pro Se* Handbook when he filed his Complaint (August 30, 2013).  (Dkt. No. 4.)  Additionally, in conjunction with its summary judgment motion, Defendant served Plaintiff with a copy of the Court's Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, which also advised Defendant of the requirements of Local Rule 7.1(a).  (Dkt. No. 64, Attach. 1.)  Out of special solicitude to Plaintiff as a *pro se* civil rights litigant, however, the Court will treat his opposition as a response to Defendant's Rule 7.1 Statement, carefully reviewing it for any record-supported disputation of Defendant's Rule 7.1 Statement.[4]

---

[4]      Moreover, as in every case, the Court reviews Defendant's record citations to determine whether they support the facts asserted in his Rule 7.1 Statement.  *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("If the evidence

With these considerations in mind, and unless otherwise noted, the following facts were asserted by Defendant in his Rule 7.1 Statement (with a record citation supporting the fact asserted) and either admitted or not addressed by Plaintiff in his opposition. (*Compare* Dkt. No. 64, Attach. 3 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 67 [Plf.'s Opp'n to Def.'s Mtn.].)

### **Plaintiff's Employment with the IRS and the IRS's Employee Suggestion Program**

1. Plaintiff was employed as an ITAS with the IRS's W&I Field Assistance Office in Albany, New York.

2. Amy Albee was Plaintiff's first line manager.

3. Jean Cain was Plaintiff's second line manager.

4. The IRS has an Employee Suggestion Program ("ESP"), pursuant to which an employee (or group of employees) can submit a suggestion intended to "increase productivity, save time, and/or [save] money to better serve the [IRS]." The employee may receive a monetary award if his or her suggestion is adopted by the IRS.[5]

5. In order to submit a suggestion through the ESP, an employee must submit the suggestion in writing on IRS's "I Suggest" Form (Form 13380).

6. The instructions to Form 13380 state that suggestions should be submitted to the ESP Coordinator.

---

submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*") (internal quotation marks omitted, emphasis added); *accord,* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed *and* the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . .").

[5] (Dkt. No. 64, Attach. 5, at 1 ["About the Employee Suggestion Program"].)

7.     In 1996 or 1997, Plaintiff proposed a program to recruit low-income high school students from predominantly minority high schools, whom the IRS would train to help citizens prepare tax returns, with the goal of eventually hiring these students into full-time positions after college graduation.[6]

8.     In 1996, Plaintiff sent his proposal to U.S. House Representative Michael McNulty.

9.     In 1997, Plaintiff met with faculty at the State University of New York at Albany ("SUNY Albany") regarding his proposal.

10.    In 2002, and again in 2004, Plaintiff submitted a suggestion through the ESP proposing, *inter alia*, revisions to certain IRS forms and notices.[7]

---

[6]     The Court notes that, although Defendant asserts that Plaintiff suggested the program "[i]n 1996 or 1997," a memorandum from Plaintiff explaining his proposal bears the handwritten date, "9-10-96." (Dkt. No. 64, Attach. 6, at GOV_145.) In addition, the Court notes that, in his opposition to Defendant's motion, Plaintiff asserts that "'ESP' [d]id not exist in 1996 and 1997[, and D]efendant provides no evidence to prove otherwise." (Dkt. No. 67 at 2.) Finally, the Court notes that Defendant does not appear to assert that Plaintiff submitted his 1996/1997 suggestion through the ESP.

[7]     (Dkt. No. 64, Attach. 7, at GOV_283-85 ["I Suggest . . ." form, signed by Plaintiff and dated 6/11/2002, proposing revisions to certain IRS letters and notices]; Dkt. No. 64, Attach. 8 [letter from Richard L. Rodriguez, Area Director, Field Assistance for Area 1 to Gary Barrack, president of "NTEU Chapter 61" (apparently Plaintiff's employee union), referencing Plaintiff's grievance related to his "suggestion submitted on June 11, 2002" and "resubmitted" on December 9, 2004]; Dkt. No. 64, Attach. 9, at 1 [Settlement Agreement dated May 31, 2007, regarding Plaintiff's grievance alleging that he "did not receive recognition for an Employee Suggestion . . . made on June 11, 2002 . . . and subsequent suggestions related to the original Suggestion"].) Defendant asserts that Plaintiff's 2002 and 2004 suggestion submissions through the ESP program concerned "the recruitment of low-income and minority students," but the documents cited by Defendant in support of this assertion (i.e., Plaintiff's "I Suggest" form, Rodriguez's letter, and the Settlement Agreement) do not clearly support it. It is true that Plaintiff's "I Suggest" form (in conjunction with revising and clarifying certain IRS forms and notices), proposed, in a footnote, that the IRS "should try to develop" an agreement with the U.S. Department of Health and Human Services to develop "Tax Education and Electronic

11.     In 2005, Plaintiff filed a union grievance in which he alleged that the IRS had adopted his 2002 suggestion, but had not given him compensation for the suggestion.

12.     This grievance culminated in a settlement agreement between Plaintiff and the IRS, in which Plaintiff received financial compensation and agreed to waive any further complaints against the IRS related to the subject of his grievance.

13.     In 2010, Plaintiff learned that a program had been implemented in another IRS office in New York State, which he viewed as the same, or substantially similar, to his minority recruitment suggestion.[8]

14.     Thereafter, in April 2010, Plaintiff discussed with his first-line and second-line managers (Albee and Cain) his earlier suggestion that the IRS develop a program to provide short-term and long-term recruitment for low-income and minority students.[9]

_____

Preparation" units in community health centers serving "primarily" low income and minority groups. (Dkt. No. 64, Attach. 7, at GOV_285 & n.1.)  Moreover, Plaintiff's "I Suggest" form proposes that "[c]enter personnel could be recruited to serve as VITA Volunteers . . . ." (*Id.*)  However, Plaintiff's suggestion does not appear to encompass the recruitment of low-income high school students for the purpose of eventually hiring those students as full-time IRS employees (which, the parties agree, was the subject of Plaintiff's 1996/1997 suggestion).  As a result, it is unclear whether the Settlement Agreement–which explicitly encompassed Plaintiff's 2002 suggestion–also encompassed Plaintiff's 1996/1997 suggestion.

[8]     (Dkt. No. 64. Attach. 11, at GOV_103 [EEO Part II Counseling Report].)  Although Defendant asserts that Plaintiff "saw an article about a program that was implemented in the Buffalo IRS Office to hire high school students" as part of a  recruitment effort, the article he cites in support of this assertion concerns a high school in Troy, New York, and does not specifically mention IRS recruitment.  (Dkt. No. 64, Attach. 10, at GOV_150.)  In any event, in his (sworn and notarized) opposition to Defendant's motion, Plaintiff asserts that he discovered that "his suggestion" was implemented when "he read a newspaper article in 2010."  (Dkt. No. 67 at 1.)  Based upon these considerations, the Court deems the fact set forth above (a variation of the fact asserted by Defendant) to be undisputed.

[9]     (Dkt. No. 64, Attach. 24, at GOV_176 ¶ 7 [Cain Decl.].)

15.     After listening to Plaintiff's suggestion for recruiting minorities, Albee and Cain advised Plaintiff that he would have to submit any suggestions through the ESP.

16.     It is not within the authority of Albee or Cain to implement Plaintiff's suggestion.

17.     Plaintiff did not submit his 2010 suggestion through the ESP, and there was therefore no action taken on it.

18.     On May 13, 2010, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor regarding his suggestion related to the IRS's diversity policy.

19.     In August 2010, Plaintiff filed a formal complaint of discrimination.[10]

### Plaintiff's Absences from Work

20.     Prior to September 2010, Plaintiff's supervisors had granted his requests for LWOP when he provided a doctor's note to account for his tardiness or absence.

21.     On September 29, September 30, October 1, October 4, and October 7, 2010, Plaintiff arrived late to work, did not have any accrued leave time available to use, and failed to call Albee regarding his tardiness or follow proper procedures for requesting leave.

22.     Plaintiff provided an undated doctor's note to account for his absences between September 29 and October 7, 2010.

23.     The note, signed by Ryan S. Marshall, FNPC, states that Plaintiff "is under my care for multiple medical conditions.  He is on medication, which, [*sic*] may make him feel tired / lethargic at times and he may require additional rest.  If you have any further questions, please

---

[10]     (Dkt. No. 64, Attach. 14 [Individual Complaint of Employment Discrimination With the Department of the Treasury, filed 8/20/10].)  In his EEO Complaint, Plaintiff alleged that IRS management "refused to take any initiative to implement diversity policy when they refused to implement my suggestion to provide short-term and long-term recruitment for low-income and minority students."  (*Id.* at GOV_62.)

call myself at the above list [*sic*] phone number."[11]

24.     Albee advised Plaintiff that the doctor's note was "not acceptable because it was not dated and . . . it did not reference a time frame that he would need leave."[12]

25.     Albee also informed Plaintiff that he could request leave without pay under the Family Medical Leave Act ("FMLA") if he provided proper documentation.

26.     Finally, Albee warned Plaintiff that he would be charged with AWOL if he did not submit a Leave Without Pay ("LWOP") request to Jean Cain.

27.     Plaintiff did not provide any other supporting medical documentation excusing his absences.

28.     As a result, Plaintiff was charged with AWOL for September 29, September 30, October 1, October 4, and October 7, 2010.

29.     Plaintiff was charged with AWOL 31 times in 2009, for a total of over 120 hours.[13]

---

[11]     (Dkt. No. 64, Attach. 15. [Doctor's Note].)

[12]     (Dkt. No. 64, Attach. 23, at ¶ 8 [Albee Supp. Decl.].)

[13]     Defendant asserts that Plaintiff was "charged with AWOL [31] times in 2009, for a total of 131.8 hours," and Plaintiff does not expressly admit or deny this assertion. (*Compare* Dkt. No. 64, Attach. 3, at ¶ 29 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 67 [Plf.'s Opp'n to Def.'s Mtn.].) In support his assertion, Defendant cites Plaintiff's work attendance records–specifically, a spreadsheet reflecting Plaintiff's use of leave time (including LWOP, AWOL, sick leave, and annual leave) in the years 2009 and 2010. (Dkt. No. 64, Attach. 16 [Plf's Attendance Records].) While the spreadsheet generally appears to be self-explanatory, the copy of the spreadsheet filed is somewhat difficult to read, and Defendant has not filed an affidavit, declaration, or other statement from a person with knowledge to explain how the exact number of AWOL hours charged (as asserted by Defendant) may be calculated from the spreadsheet. However, from the Court's review of the spreadsheet, it appears that Plaintiff was charged with AWOL 31 times in 2009 (as asserted by Defendant), for a total of over 120 hours. (*Id.*) Based upon the foregoing, the Court concludes that Defendant's factual assertion is sufficiently supported by the record evidence to the extent set forth above (and, again, this assertion not disputed by Plaintiff to any extent).

30.     Plaintiff was charged with AWOL 39 times in 2010 totaling 150.3 hours.

31.     Plaintiff was permitted to take LWOP 157 times in 2009 for a total of approximately 560 hours.[14]

32.     Plaintiff was permitted to take LWOP 80 times in 2010 for a total of approximately 237 hours.[15]

33.     Between the time Plaintiff contacted on EEO Counselor (in May 2010) and the end of 2010, Plaintiff was permitted to use LWOP 47 times.

### C.     Undisputed Material Facts on Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment is comprised of a single document (titled "Plaintiff's Dispositive Motion for Decision Without Hearing") and contains both a "Statement of Facts" and legal arguments.  (Dkt. No. 65 [Plf.'s Mtn.] [capitalization omitted].)  The "Statement of Facts" section of Plaintiff's motion, which the Court construes as Plaintiff's Rule 7.1

---

[14]     (Dkt. No. 64, Attach. 16 [Plf.'s Attendance Records].)  Defendant asserts that Plaintiff was permitted to take a total of "approximately 567 hours" of LWOP time in 2009, and Plaintiff does not expressly admit or deny this assertion.  (*Compare* Dkt. No. 64, Attach. 3, at ¶ 31 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 67 [Plf.'s Opp'n to Def.'s Mtn.].)  However, as discussed in note 7 of this Decision and Order, the spreadsheet cited by Defendant in support of his factual assertion is somewhat difficult to decipher.  Based on the Court's review of the spreadsheet, the Court finds that Defendant's factual assertion is sufficiently supported by the record evidence to the extent set forth above (and, again, this assertion is not disputed by Plaintiff to any extent).

[15]     (Dkt. No. 64, Attach. 16 [Plf.'s Attendance Records].)  Defendant asserts  that "Plaintiff was permitted to take LWOP 80 times in 2010 totaling 240.5 hours," and Plaintiff does not expressly admit or deny this assertion.  (*Compare* Dkt. No. 64, Attach. 3, at ¶ 32 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 67 [Plf.'s Opp'n to Def.'s Mtn.].)  However, as discussed in notes 7 and 8 of this Decision and Order, the spreadsheet cited by Defendant in support of his factual assertion is predicated is somewhat difficult to decipher.  Based on the Court's review of the spreadsheet, the Court finds that Defendant's factual assertion is sufficiently supported by the record evidence to the extent set forth above (and, again, this assertion is not disputed by Plaintiff to any extent).

Statement, contains 13 sequentially numbered factual assertions. (*Id.* at 1-2.) Defendant has not responded to Plaintiff's Rule 7.1 Statement. Somewhat more problematic is the fact that, in support of each of his factual assertions, Plaintiff has cited an "Investigative File" by reference to "Tab" number and page number, but he has not filed the records on which he relies or provided any express indication as to whether he is relying on the same exhibits filed by Defendant in support of his motion for summary judgment. (Dkt. No. 65 at 1-2, ¶¶ 1-13.) This failure alone constitutes a sufficient basis for denying Plaintiff's motion. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Each fact listed [in a movant's Statement of Material Facts] shall set forth a specific citation to the record where the fact is established. <u>Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.</u>").

However, the factual assertions in Plaintiff's Rule 7.1 Statement are (with a couple exceptions) virtually identical to facts asserted in Defendant's Rule 7.1 Statement, and the parties thus appear to largely rely on the same universe of material facts and supporting documents. (*Compare* Dkt. No. 64, Attach. 3 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 65 at 1-2.) Accordingly, under the circumstances of this case (and in light of Plaintiff's status as a *pro se* civil rights litigant), the Court will deem Plaintiff's factual assertions to have been sufficiently supported where those assertions find support in the same record evidence filed and relied upon by Defendant.

The Court will not recite the entirety of Plaintiff's Rule 7.1 Statement (which, again, is virtually identical to Defendant's Rule 7.1 Statement and with which the parties are familiar). Instead, the Court addresses only the following two factual assertions.

First, Plaintiff asserts that, at all relevant times, he was employed by the IRS not only as an ITAS, but also as "Black Employment and Assistant Black Employment Program Manager." (Dkt. No. 65 at 2 ¶ 2[b].)  Although Defendant also asserted that Plaintiff was an ITAS (and the parties thus agree on this point), Plaintiff cites no record evidence (by citation to a purported "Investigative File" or otherwise) that he was, at all relevant times, "Black Employment and Assistant Black Employment Program Manager."  However, in response to Plaintiff's motion, Defendant has filed a memorandum, dated June 16, 1997, from "Chief, EEO/Diversity," to Plaintiff.  (Dkt. No. 66, Attach. 2 [Memorandum, dated 6/16/97].)  The memorandum advised Plaintiff that, effective on that date, he was "being relieved of [his] collateral duties as the Assistant Black Employment Program Manager for the Upstate New York District" based on "[s]everal events [that] have transpired" demonstrating that he was "unable to adequately serve the District in this role."  (*Id.*)  The memorandum lists three such "events," one of which was that, on May 15, 1997, Plaintiff "attended an external meeting representing the [IRS] without securing approval to act as [its] representative," and, at the meeting, made "commitments in the [IRS]'s name which [he] w[as] not authorized to do."  (*Id.*)[16]  As a result, the Court will treat as uncontroverted the fact that, during the relevant times, Plaintiff was employed by the IRS as the "Assistant Black Employment Program Manager."

Second, Plaintiff asserts that, "[i]n 2002 and again in 2004," he submitted a suggestion through the ESP "regarding outreach for the Earned Income Tax Credit (EITC) program."  (Dkt. No. 65 at 2 ¶ 7.)  However, to the extent that Plaintiff is referring to the same 2002 and 2004 suggestions referenced by Defendant in his Rule 7.1 Statement, it is not entirely clear from

---

[16]        According to Defendant, the memorandum was "submitted by Plaintiff during discovery[.]"  (Dkt. No. 66 at 3 [Def.'s Opp'n Memo. of Law].)

Plaintiff's "I Suggest Form" (dated June 11, 2002) that his suggestion involved only (or even primarily) the earned income tax credit.  (Dkt. No. 64, Attach. 7, at GOV_283-85.)  The content of the "I Suggest" form is discussed more fully *supra*, in note 6 of this Decision and Order.  As a result, the Court will *not* treat as uncontroverted the fact asserted by Plaintiff.

### D. Parties' Briefing on the Pending Motions

#### 1. Defendant's Motion for Summary Judgment

##### a. Defendant's Memorandum of Law

Generally, in support of his motion, Defendant argues as follows: (1) to the extent that Plaintiff's discrimination claims are predicated on his 1997, 2002, and/or 2004 suggestions for minority student recruitment (or the failure to implement these suggestions), they are time-barred under 20 C.F.R. § 1614.105(a) because (a) Plaintiff did not "initiate EEO contact" until May 2010, and (b) any discriminatory motive behind the decision not to implement his suggestions would have accrued when his suggestions were rejected (and not when Plaintiff learned of a similar program having been implemented in a different office, years later); (2) Plaintiff waived and released any claims related to his suggestions for a minority student recruitment program as part of the 2007 settlement agreement with the IRS; (3) in any event, Defendant is entitled to judgment as a matter of law on Plaintiff's discrimination claims because (a) the fact that his suggestions for a minority recruitment program were not accepted or implemented did not constitute an adverse employment action (given that it had no bearing on the terms or conditions of his employment, job responsibilities, or pay), (b) the fact that he was charged with AWOL instead of being permitted to use LWOP also did not constitute an adverse employment action (given that LWOP is, by definition, unpaid, and Plaintiff has not alleged that he was terminated,

demoted, or lost job opportunities due to being charged with AWOL), (c) Plaintiff has identified no direct evidence that he was subjected to discriminatory animus based on his race, age, or gender (such as that any comments were made about these characteristics, or that they were considered in any decision-making process related to his employment), (d) Plaintiff has identified no evidence suggesting that similarly situated employees were treated more favorably than he was (i.e., by receiving greater rewards for their suggestions, or being granted LWOP, rather than charged with AWOL, under circumstances similar to Plaintiff's), (e) Defendant had legitimate, non-discriminatory reasons for not implementing Plaintiff's suggestion, given that Plaintiff did not submit his suggestion through the ESP for formal evaluation in 2010, despite Albee's and Cain's suggestions that he do so, (f) Defendant had legitimate, non-discriminatory reasons for charging Plaintiff with AWOL, given that Plaintiff violated the IRS's leave policy when he (i) repeatedly called in late to work, even after exhausting all of his leave and using LWOP excessively, and (ii) provided only an undated doctor's note stating that his medication was "mak[ing] him feel tired and [that] he may need additional rest," and never provided additional documentation; and (4) Defendant is entitled to judgment as a matter of law on Plaintiff's retaliation claim because (a) for the same reasons discussed with respect to his discrimination claim, there is no evidence supporting the conclusion that he suffered an adverse employment action, or that any alleged actions taken by the IRS would not have occurred but-for his EEO complaint, and (b) his time and attendance records establish that he was frequently charged with AWOL many times both before and after he filed his EEO complaint. (Dkt. No. 64, Attach. 2, at 7-19 [Def.'s Memo. of Law].)

### b.    Plaintiff's Opposition

Generally, liberally construed, Plaintiff's response to Defendant's motion for summary judgment argues as follows: (1) his discrimination claims are not time-barred because he "did not discover that his suggestion was '[i]mplemented' until he read a newspaper article in 2010"; (2) the 2007 settlement agreement pertained to "the Earned Income Tax Program" (rather than minority recruitment), and did not constitute a release of claims related to his suggestion made in 1996 and/or 1997; (3) a factfinder could reasonably infer that he was subjected to discrimination, and that Defendant's purportedly non-discriminatory reasons for its actions were pretextual, because (a) although he did not submit his suggestion to the ESP in 2010, he learned for the first time in 2010 that his suggestion submitted in 1996 and/or 1997 had been implemented, (b) similarly situated employees who were "white, young and female" were "given Equal Opportunity awards for 'implementing'" his suggestion in the IRS's Buffalo, Syracuse, and Troy offices, and (c) Defendant has not explained why Plaintiff's suggestion was rejected when he submitted it, but was implemented when it was "submitted by other white employees"; and (4) with respect to his retaliation claim, (a) Plaintiff "requested and received advance sick leave" before he filed his EEO complaint, but, "[a]fter" he filed his EEO complaint, "his request for advance sick leave was denied," and (b) Defendant did not deny "advance sick leave," or charge AWOL to, similarly situated employees outside of Plaintiff's protected classes.  (Dkt. No. 67 at 1-2.)[17]

---

[17]     Page citations to Plaintiff's opposition to Defendant's motion, as well as to Plaintiff's memorandum of law in support of his own motion, refer to the pagination generated by CM/ECF, the Court's electronic filing system.

### c. Defendant's Reply Letter-Brief

Generally, in reply, Defendant argues as follows: (1) because "the crux" of Plaintiff's discrimination claims took place in 1996 or 1997, these claims are time-barred and were waived pursuant to the 2007 settlement agreement; (2) Plaintiff's assertion that he did not learn until 2010 that his suggestion had been implemented is belied by the 2007 settlement agreement (which resolved his grievance, filed in 2005, that the IRS implemented his earlier suggestions without compensating him); (3) the failure to implement his suggestions did not constitute an adverse employment action, and Plaintiff has not identified any evidence that the terms or conditions of his employment were impacted; (4) an assertion of "a racial imbalance in the makeup of a workplace" is insufficient to establish discrimination; (5) with respect to Plaintiff's argument that his suggestion was implemented when submitted by white employees, Plaintiff has identified no evidence that any suggestions similar to his were ever made by a white employee, and accepted and implemented by the IRS; (6) Plaintiff's allegation that he was denied pre-paid sick leave after he filed his EEO complaint must be rejected because (a) it was improperly asserted for the first time in his opposition to Defendant's motion for summary judgment, (b) he has identified no evidence supporting this claim, (c) his time records reflect that his usage of "various types of leave time" (i.e., both AWOL and LWOP) were similar both before and after he filed his EEO complaint, and (d) he does not contest that he was not present at work on the days at issue and did not have available leave time to cover those days.  (Dkt. No. 70 [Def.'s Reply Ltr. Br.].)

## 2. Plaintiff's Motion for Summary Judgment

### a. Plaintiff's Memorandum of Law

Generally, liberally construing his memorandum of law, Plaintiff argues as follows: (1) he is a member of a protected class; (2) he was subjected to adverse employment actions in that (a) he was terminated from his position as Assistant Black Employment Manager, (b) he was denied monetary compensation for his suggestion to recruit low-income and minority students to the IRS, and (c) he was declared AWOL because he "engag[ed] in EEO activity"; (3) "[n]on-managerial employees under Floyd's authority" (who are white, but otherwise similarly situated to Plaintiff given their non-managerial positions) were "given EEO awards" for implementing Plaintiff's recruitment suggestion in other cities (namely, Buffalo, Syracuse, and Troy, New York), but Plaintiff was not awarded or compensated;[18] (4) the fact that Plaintiff did not submit his suggestion through the ESP does not constitute a legitimate non-discriminatory reason for Defendant's conduct because the ESP program did not exist in 1996 or 1997, and Plaintiff submitted his idea in the appropriate manner (namely, by proposing it to his supervisors, Floyd and Rafferty, who did not act upon it); (5) "[n]o minority person ever worked in the Unit as a supervisor," a fact which suggests discriminatory animus; (6) "[t]here is no evidence that any other employees under Albee's supervision were charged with AWOL in 2010," and a factfinder could reasonably infer that charging Plaintiff with AWOL was motivated by discriminatory animus; (7) Defendant's rejection of his doctor's note as insufficient to justify granting him

---

[18] In another section of his memorandum of law, Plaintiff asserts that "[a]ll the other" ITASs "are of a difference race, ten are female, and [Plaintiff] is the oldest employee under Albee's supervision," and that "younger, white female managers disregarded his suggestions and were attempting to remove" him. (Dkt. No. 65 at 6.)

LWOP during the week of September 29, 2010, was pretextual because this doctor's note (aside from being undated) was "substantially the same" as "earlier documentation" that he submitted, and based on which the IRS granted him LWOP "on a regular basis during the first nine months of 2010"; (8) his filing of an EEO complaint constituted a protected activity for purposes of his retaliation claim; and (9) the fact that he was charged with AWOL soon after filing his EEO complaint demonstrates both a "deviation from past practice" (i.e., granting him LWOP in earlier months), and that Albee knew that Plaintiff filed the EEO complaint. (Dkt. No. 65 at 3-8 [Plf.'s Memo. of Law].)

### b. Defendant's Opposition Memorandum of Law

Generally, in response to Plaintiff's motion, Defendant argues as follows: (1) Plaintiff is not entitled to summary judgment with respect to his discrimination claims because (a) these claims are predicated on events that occurred in 1996 and/or 1997, and are therefore time-barred, (b) he waived his claims when he entered into the settlement agreement, (c) there is no evidence that his "alleged termination" from his role as Assistant Black Employment Manager constituted an adverse employment action for purposes of his claim (given that he was "removed for this collateral duty" in 1997 after attending a meeting on behalf of the IRS without the IRS's permission), (d) there is no evidence that the fact that he was not compensated for his suggestion constituted an adverse employment action, or that he was in fact entitled to compensation for his suggestion, (e) there is no evidence that the fact that he was charged with AWOL for certain of his absences constituted an adverse employment action, and he does not assert that he was disciplined, lost promotional opportunities, or was otherwise negatively impacted by being charged with AWOL (rather than granted LWOP), (f) there is no evidence supporting his

assertions that other "non-managerial employees under Floyd's authority" were given EEO awards for implementing Plaintiff's recruitment suggestion in other IRS offices (i.e., Buffalo, Syracuse, and Troy, New York), that any IRS employee ever received compensation for a suggestion to implement any internship program, or that any such employees were similarly situated to him, and (g) his bald assertion that there is a lack of minorities in supervisory positions is not a basis from which a discriminatory intent may be reasonably inferred; and (2) Plaintiff is not entitled to summary judgment with respect to his retaliation claim because (a) record evidence demonstrates that Plaintiff was charged with AWOL for his absences many times both before and after he filed his EEO complaint in 2010, and that he was permitted to use LWOP numerous times after he filed his EEO complaint, (b) his "blatant abuse of the IRS' leave policies" (as evidenced by his frequent failure to report to work, despite having no accrued leave time) constitutes a legitimate non-discriminatory reason for the AWOL charges. (Dkt. No. 66 at 2-6 [Def.'s Opp'n Memo. of Law].)

## II. LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[19] As for the materiality requirement, a dispute of

---

[19]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[20]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

---

[20]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[21]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[22] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[21]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[22]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

**III.  ANALYSIS**

**A.  Whether Plaintiff's Discrimination Claims Are Time-Barred**

After carefully considering the matter, and for the reasons that follow, the Court answers this question in the negative.

As noted above, Defendant argues that, "[t]o the extent that Plaintiff bases his discrimination claim on the alleged failure . . . to implement his 1997, 2002, and 2004 suggestions, those claims are time-barred" because he did not initiate EEO contact until May 2010 (and thus, more than 45 days after the allegedly discriminatory act).  (Dkt. No. 64, Attach. 2, at 7 [Def.'s Memo. of Law].)  In response, Defendant argues that his discrimination claim is not time-barred because "he could not allege discrimination until he became aware of a discriminating act," which, in this case, was the "implementation" of a program that he had suggested in Troy, New York.  (Dkt. No. 67 at 3 [Plf.'s Opp'n to Def.'s Mtn.]; *see also* Dkt. No. 65 at 5-6 [Plf.'s Mtn.] ["Plaintiff assumed his [1997] suggestion had not been implemented until he read a newspaper article in 2010 about the implementation of his suggestion at Catholic High School in Troy, New York."].)  Plaintiff asserts that his discrimination claim is "not based on [the IRS's] <u>rejection</u> but on [its] <u>implementation</u>" of his recruiting suggestion without compensating him.  (Dkt. No. 67 at 3.)[23]  A newspaper article in the evidentiary record describes

---

[23]      Plaintiff's assertion that his discrimination claim is "not based on <u>rejection</u> but on <u>implementation</u>" of his suggestion when it was proposed by other individual(s) (Dkt. No. 67 at 3) appears to be undermined by his EEO complaint, in which he asserted that the IRS discriminated against him when management "*refused to implement* my suggestion to provide short-term and long-term recruitment for low-income and minority students" (Dkt. No. 64, Attach. 14 [EEO Complaint, executed 8/13/10] [emphasis added]).  However, the Court construes Plaintiff's discrimination claim (with the utmost liberality) to allege that he was subjected to discrimination when his rejected suggestion was accepted and implemented upon the suggestion of other (younger, white, female) employees.

"a unique program that trains high school students at Catholic Central High School" to "prepare

tax returns for poor families." (Dkt. No. 64, Attach. 10.) Moreover, the article states that

"Catholic High has run the accountant program for the last decade," that participating students

"earn their certification from the IRS," and that "their work is checked by an adult." (*Id.*)[24]

EEOC regulations provide that federal employees "who believe they have been

discriminated against on the basis of race, color, . . . sex, [or] age . . . must consult a Counselor

prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. §

1614.105(a); *accord, Smith v. Colvin*, 574 F. App'x 55, 55 (2d Cir. 2014) (summary order)

("Before initiating a federal suit under Title VII . . . a litigant must exhaust his [or her] claim in

accordance with EEOC regulations. In addition, a litigant who initiates proceedings with the

EEOC on an ADEA claim is obliged to exhaust such proceedings before filing a civil action

under the ADEA.") (internal citations and quotation marks omitted). More specifically, "[a]n

aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter

alleged to be discriminatory[.]" 29 C.F.R. § 1614.105(a)(1). "The 45-day period serves as a

statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45

days prior to the employee's initiation of administrative review are time-barred." *Fitzgerald v.*

---

[24]     An EEO Counseling Report related to Plaintiff's complaint states that, "on or
about May 6, 2010, someone left" on Plaintiff's desk "an article about a program that was being
started" in the IRS's Buffalo office and which "would allow high school students to obtain
certain jobs at the IRS during the summer" with the prospect of full time employment after
college graduation. (Dkt. No. 64, Attach. 11, at GOV_103.) The EEO Counseling Report notes
that "[t]he aggrieved stated that the program is going to use students from Catholic High School
in Albany, New York," and that "someone stole his idea and implemented it using Catholic High
School, which is a majority White school." (*Id.*) The article in the record (which concerns a
program at Catholic High School in Troy, not Albany) does not mention or discuss any IRS
career recruitment in relation to the program.

*Henderson*, 251 F.3d 345, 359 (2d Cir. 2001). This time period may be extended where, *inter alia*, "the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, [or] he or she did not know and reasonably should not have been [*sic*] known that the discriminatory matter or personnel action occurred[.]" 29 C.F.R. § 1614.105(a)(2). "In other words, the time for contacting a counselor, in some cases, begins to run when the plaintiff reasonably suspects discrimination." *Smith*, 574 F. App'x at 56. However, "the plaintiff bears the burden of showing extraordinary circumstances to justify such tolling." *Barbarito v. McHugh*, 11-CV-0179, 2013 WL 2120402, at *3 (N.D.N.Y. May 15, 2013) (Sharpe, C.J.) (citing *Boos v. Runyon*, 201 F.3d 178, 184-85 [2d Cir. 2000]).

To the extent that Plaintiff's discrimination claim may be understood to be predicated solely upon the rejection of his suggestion as first made in 1996 or 1997, Defendant is correct that his claim is time-barred under 29 C.F.R. § 1614.105(a)(1). (Dkt. No. 64, Attach. 2, at 7-8 [Def.'s Memo. of Law].) However, Plaintiff asserts that this is *not* his claim (i.e., that he is not claiming that the IRS's rejection of his suggestion approximately 20 years ago was, in itself, due to an animus related to his race, gender, or age). Rather, Plaintiff argues that Defendant discriminated against him by implementing the same suggestion that he made (more than 10 years ago and as many as 20 years ago), when made by "employees who are white, young and female" at some later point in time. (Dkt. No. 67 at 3.) The Court finds this distinction (seemingly drawn for the purpose of avoiding Defendant's limitations-period argument) to be, at least in part, a semantical distinction. An award given to other employees for an implemented suggestion, considered in isolation, would appear to have relation to, or effect upon, Plaintiff or his employment. What Plaintiff appears to be arguing is (1) that Defendant's discriminatory

animus only *manifested* itself when Defendant allegedly implemented Plaintiff's suggestion after it was suggested by other (young, white, female) employees, (2) that he only learned of this fact in 2010, when he read the 2010 article, and (3) that, for this reason, the EEOC's 45-day rule should be tolled. The Court is skeptical of this argument because the "personnel action," at least arguably, occurred in 1996/1997. However, under the circumstances (and for the sake of argument), the Court will assume that Plaintiff has raised a genuine dispute of material fact with respect to whether "he did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred" such that tolling under 29 C.F.R. § 1614.105(a)(2) is appropriate.[25] As a result, Defendant's motion for summary judgment on statute-of-limitations grounds is denied at this time.[26]

### B. Whether Plaintiff Waived His Discrimination Claims Pursuant to the Settlement Agreement

After carefully considering the matter, and for the reasons set forth below, the Court answers this question in the negative.

---

[25] *See generally Pauling v. Sec'y of Dep't of Interior*, 160 F.3d 133, 136-37 (2d Cir. 1998) (concluding that an issue of fact existed with respect to whether plaintiff had notice of limitations period under 29 C.F.R. § 1614.105[a] and whether tolling would be appropriate on that basis); *Carby v. Holder*, 11-CV-5775, 2013 WL 3481722, at *6 (S.D.N.Y. July 10, 2013) (holding that, with respect to tolling based on lack of notice of applicable time limit, "the [c]ourt cannot say that a jury would be unreasonable in concluding that the plaintiff was unaware of the 45-day time limit").

[26] In his reply letter-brief, Defendant argues that Plaintiff's assertion that he did not learn until 2010 that his suggestion had been implemented is belied by his 2005 grievance and the 2007 settlement agreement. (Dkt. No. 70 at 1 [Def.'s Reply Ltr. Br.].) However, Plaintiff appears to be correct that "the 2007 settlement agreement did not pertain . . . to minority recruitment." (Dkt. No. 67 at 3.) A copy of Plaintiff's 2005 grievance does not appear to have been filed, and the settlement agreement states that the grievance alleged that the IRS failed to recognize Plaintiff for his suggestion made on June 11, 2002 ("and subsequent suggestions related to the Original Suggestion"). (Dkt. No. 64, Attach. 9, at GOV_271 [Settlement Agreement].) As noted above, the suggestion that Plaintiff submitted on June 11, 2002, does not appear to involve a proposal for IRS recruitment. *See, supra*, note 6 of this Decision and Order.

As noted above, Defendant argues that, pursuant to the 2007 settlement agreement (which resolved his 2005 grievance), Plaintiff waived his present discrimination claims. (Dkt. No. 64, Attach. 2, at 8-10 [Def.'s Memo. of Law].) However, the settlement agreement dealt expressly with the suggestion that he submitted on June 11, 2002, "and subsequent suggestions related to" that suggestion. (Dkt. No. 64, Attach. 9, at GOV_271.) As discussed above, Plaintiff's June 11, 2002, suggestion does not appear to bear any relation to minority recruiting, which is the subject of his EEO complaint and Second Amended Complaint. Moreover, a copy of Plaintiff's 2005 grievance does not appear to have been filed by either party in support of their respective motions. While the settlement agreement contains a very broad provision requiring Plaintiff to "waive any and all rights or claims as to matters raised in the instant grievance, *and all other outstanding or potential complaints [or] grievances* . . . not otherwise identified herein arising from matters occurring prior to" its execution, it also provided that Plaintiff "does not waive any rights of claims that may arise after the date" of its execution. (Dkt. No. 64, Attach. 9, at GOV_272, ¶ 7[c], [d] [emphasis added].) "In the absence of a clear right or obligation set forth in the language of a contract–and a settlement agreement is a contract–a court should not lightly find an implied right or obligation." *Dash v. Bd. of Educ. of City Sch. Dist. of New York*, 15-CV-2013, 2017 WL 838226, at *10 (E.D.N.Y. Mar. 3, 2017) (internal quotation marks omitted).

Accordingly, the Court cannot conclude, as a matter of law and based upon the record evidence before it, that Plaintiff waived his right to assert his present (federal statutory) discrimination claims by entering into the settlement agreement, which dealt with an apparently unrelated grievance.

However, the Court reaches a different conclusion with respect to his 2002 and 2004 suggestions. In his opposition (which, in any event, contains arguments related to his 1996/1997 suggestion, and not his 2002/2004 suggestions), Plaintiff expressly acknowledges that the 2007 settlement agreement "pertained to the Earned Income Tax Program." (Dkt. No. 67 at 1.) Moreover, in his Second Amended Complaint, Plaintiff alleges that he received compensation after settling his grievance related to the 2002 suggestion. (Dkt. No. 55 at 4.) As a result, to the extent that Plaintiff may be understood to argue that the IRS's refusal to implement his 2002 suggestion was discriminatory, he has waived this claim. Moreover, even if Plaintiff had not waived this claim, the Court would lack jurisdiction over it because his EEO complaint referenced only IRS management's alleged failure to implement his "suggestion to provide short-term and long-term recruitment for low-income and minority students" (and made no reference to any other suggestion he has ever submitted). (Dkt. No. 64, Attach. 14, at GOV_62.) *See also Fitzgerald*, 251 F.3d at 359 ("If a claimant has failed to pursue a given claim in administrative proceedings, the federal court generally lacks jurisdiction to adjudicate that claim."). Finally, even if Plaintiff had not waived any claim related to his 2002/2004 suggestions and the Court had jurisdiction over such a claim, Plaintiff has failed to adduce evidence from which a factfinder could reasonably infer that the failure to implement those suggestions was the result of discriminatory animus.

C.  **Whether Defendant Is Entitled to Judgment as a Matter of Law with Respect to Plaintiff's Discrimination Claims**

After carefully considering the matter, the Court answers this question in the affirmative. More specifically, the Court accepts Defendant's third argument in his memorandum of law and his related arguments in his reply letter-brief. (Dkt. No. 64, Attach. 2, Part III, at 10-16 [Def.'s

Memo. of Law]; Dkt. No. 70 at 1-2 [Def.'s Reply Ltr. Br.].)  To those arguments, the Court adds two points.[27]

First, the Court finds that the record does not contain any basis from which it may be reasonably inferred that Plaintiff was subjected to an adverse employment action for purposes of his discrimination claim.  "An adverse employment action is 'a materially adverse change in the terms and conditions of employment,' for example, 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'"  *Rowe v. Jagdamba, Inc.*, 302 F. App'x 59, 62 (2d Cir. 2008) (quoting *Sanders v.*

---

[27]    Employment discrimination claims under Title VII and the ADEA are "analyze[d] . . . using the now-familiar burden-shifting framework established by" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016).  To establish a *prima facie* case, a plaintiff must show the following: "(1) that he [or she] belonged to a protected class; (2) that he [or she] was qualified for the position he held; (3) that he [or she] suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (quoting *Feingold v. New York*, 366 F.3d 138, 152 [2d Cir. 2004]) (applying this test to Title VII disparate treatment claim); *accord, Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466-67 (2d Cir. 2001) (applying the same test to ADEA claim).  If the plaintiff establishes a *prima facie* case, "the burden of production . . . shift[s] to the defendant to offer a legitimate, nondiscriminatory rationale for its actions."  *Kovaco*, 834 F.3d 136; *accord, Chin*, 685 F.3d at 151; *Abdu-Brisson*, 239 F.3d at 466.  "If the defendant satisfies its burden of production, then the presumption raised by the *prima facie* case is rebutted and drops from the case, such that [a]t the final stage, the plaintiff then has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision."  *Kovaco*, 834 F.3d at 136 (internal quotation marks omitted).  "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 [2009]); *accord, e.g., Varno v. Canfield*, 664 F. App'x 63, 65 (2d Cir. 2016) (summary order) ("Unlike Title VII claims, ADEA claims require that age be the 'but-for' cause of the employer's adverse decision.") (internal quotation marks omitted).

*N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 [2d Cir. 2004] [quotation marks and alteration omitted]).  Even assuming that the denial of such a monetary award for an employee suggestion through the ESP may, under certain circumstances, constitute an adverse employment action, the record does not support the conclusion that Plaintiff was entitled to such an award here.  More specifically, in his opposition to Defendant's motion, Plaintiff asserts that (1) the ESP did not exist in 1996 or 1997 (i.e., at the time he made his minority recruitment suggestion), and (2) the 2007 settlement agreement (which concerned Plaintiff's 2002 and 2004 ESP suggestions) "did not pertain . . . to minority recruitment."  (Dkt. No. 67 at 2-3.)  Considering Plaintiff's assertions in combination with the fact that he did not submit his minority recruitment suggestion through the ESP in 2010 (when he discussed his suggestion with Albee and Cain, who suggested that he do so) (Fact. No. 17 in Part I.B. of this Decision and Order), it does not appear that Plaintiff ever formally submitted his suggestion at a time when the IRS provided monetary award incentives for employee suggestions.  The record evidence does not suggest otherwise.[28]

Second, even assuming Plaintiff has raised a genuine dispute of material fact with respect to having suffered an adverse employment action, he has not identified any basis for reasonably inferring that the adverse action was undertaken due to discriminatory animus.  The record is

---

[28]     In his own motion, Plaintiff argues that his "[t]ermination from his position as Assistant Black Employment Manager" by Sharon Floyd, EEO Director, also constituted an adverse employment action.  (Dkt. No. 65 at 4 [Plf.'s Mtn.].)  The Court concludes that any claim predicated upon this action must be dismissed because (1) given that this occurred in 1997, any claim related thereto is time-barred, (2) the record contains no evidence about what the role of Assistant Black Employment Manager entailed, or what (if any) benefits Plaintiff lost when he was removed from that role, and (3) the June 16, 1997, memorandum from Floyd to Plaintiff, advising him that he was being "relieved of [his] collateral duties," provides three separate performance-related reasons for this action, which, the Court finds, constitute a legitimate, non-discriminatory reason for the removal and which Plaintiff has failed to rebut with any evidence of pretext.  (Dkt. No. 66, Attach. 2.)

devoid of any direct evidence of animus based on his race, gender, or age (such as comments by supervisors or coworkers, or any overt indication that these characteristics were considered with respect to any action taken regarding his employment). Moreover, although Plaintiff appears to cast his claim as arising from disparate treatment, he has not sufficiently identified anyone from outside of his protected groups who were treated more favorably. "A plaintiff relying on disparate treatment evidence 'must show [he or] she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 [2d Cir. 2000]); *accord, Shumway v. United Parcel Serv.*, 118 F.3d 60, 64 (2d Cir. 1997). Here, Plaintiff argues that Defendant "award[ed] benefits to other similarly situated employees who are white, young and female" (Dkt. No. 67 at 3), but has not adduced admissible record evidence that either identifies any other coworker in greater detail or establishes that any such coworker was subject to the same workplace standards, performed similar job functions, or shared any other "objectively identifiable basis for comparability." *Graham*, 23 F.3d at 40 (internal quotation marks omitted); *accord, e.g., Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 417-18 (2d Cir. 2011) (summary order) (noting that plaintiff "offer[ed] 'little more than conclusory statements' and 'sweeping allegations unsupported by admissible evidence'" that similarly situated male coworkers were treated differently). Notably, the record does not contain any evidence that any minority recruitment program implemented by the IRS had its genesis in a suggestion proposed by any other employee (much less that any such employee was white, female, and/or younger than Plaintiff and similarly situated to him).

For each of these reasons, as well as those set forth in Defendant's memorandum of law and reply letter-brief, the Court concludes that Defendant is entitled to judgment as a matter of law with respect to Plaintiff's discrimination claims.

> **D.      Whether Defendant Is Entitled to Judgment as a Matter of Law with Respect to Plaintiff's Retaliation Claim**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendant's memorandum of law and reply letter-brief.  (Dkt. No. 64, Attach. 2, at 17-19 [Def.'s Memo. of Law]; Dkt. No. 70 at 1-2 [Def.'s Reply Ltr. Br.].)  To those reasons, the Court adds two points.[29]

First, although filing an EEO complaint (as Plaintiff did here) constitutes a protected activity, Plaintiff has not identified any evidence from which it may be reasonably inferred that his being charged with AWOL (rather than receiving LWOP) on the dates in question constitutes a materially adverse action for purposes of his retaliation claim.  *See Hicks v. Baines*, 593 F.3d

---

[29]      "Retaliation claims under Title VII and the ADEA are also analyzed under the *McDonnell Douglas* burden-shifting test[.]"  *Gorzynski*, 596 F.3d at 110; *accord, e.g., Sellick v. Agency-Castle Point*, 09-CV-6616, 2010 WL 2813431, at *11 (S.D.N.Y. July 16, 2010) ("Retaliation claims under Title VII and the ADEA are analyzed under the same burden-shifting framework employed for considering claims of discrimination.").  "To establish a prima facie case of retaliation, an employee must show that (1) [he or] she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action."  *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).  "In order to succeed on a retaliation claim after a defendant has established a legitimate, non-discriminatory reason for the adverse action, the plaintiff must present evidence that retaliation was the 'but-for' cause of the action."  *Varno*, 664 F. App'x at 66 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 [2013] ["Title VII retaliation claims must be proved according to traditional principles of but-for causation."]).  Moreover, "[a]lthough the Second Circuit has not definitively determined whether the 'but for' causation standard applies to retaliation claims under the ADEA, several courts in this Circuit accept that, in light of recent Supreme Court decisions, the 'but for' analysis is appropriate."  *Ulrich v. Moody's Corp.*, 13-CV-0008, 2017 WL 1232709, at *14 (S.D.N.Y. Mar. 31, 2017) (citation omitted) (collecting cases).

159, 165 (2d Cir. 2010) ("Actions are materially adverse if they are harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.") (internal quotation marks omitted).  Although the IRS's Leave Policy Handbook contemplates that "AWOL is not considered a disciplinary action [but] may form the basis for future disciplinary action" (Dkt. No. 64, Attach. 18, at GOV_387), the record does not support the conclusion that Plaintiff was disciplined or that he was terminated, was demoted, or suffered any other employment-related consequences as a result of being charged with AWOL on the dates at issue (or, for that matter, on any dates).  Simply stated, being charged with AWOL would not have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Second, even if charging Plaintiff with AWOL (and not granting him LWOP) constituted a materially adverse action, the record does not reasonably suggest that the AWOL charges were causally connected to Plaintiff's EEO complaint.  As an initial matter, Plaintiff argues that Defendant "does [not] allege that other similarly situated employees were charged with AWOL[.]"  (Dkt. No. 67 at 4.)  At the first step of the *McDonnell Douglas* framework, Defendant is not required to show that similarly situated employees were treated the same as Plaintiff; rather, establishing that similarly situated employees were treated *differently* is one means by which *a plaintiff* may attempt to demonstrate causation.  *See Hicks*, 593 F.3d at 170 (explaining that "[p]roof of causation" may include "circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct").  Plaintiff has not identified any such evidence in this case.  Moreover, although Plaintiff notes that he was charged with AWOL on certain dates in September 2010 and October 2010, in relatively close temporal proximity to

the filing of his EEO complaint, he does not dispute that (1) he failed to properly request leave for the dates at issue, (2) he was charged with AWOL on numerous occasions *before* he filed his EEO complaint, and (3) he was granted LWOP on numerous occasions *after* he filed his EEO complaint. Fact Nos. 21, 29-33 in Part I.B. of this Decision and Order.[30] Based on these facts, and in the absence of any other evidence of retaliatory motive (direct or circumstantial), the Court concludes that the record provides no basis from which it may be reasonably inferred that Plaintiff's EEO complaint was the but-for cause of his being charged with AWOL on the handful of dates singled out in his Second Amended Complaint.

For each of these reasons, as well as those set forth in Defendant's memorandum of law and reply letter-brief, the Court concludes that Defendant is entitled to judgment as a matter of law with respect to Plaintiff's retaliation claim.

Based upon the foregoing, the Court concludes that Defendant has established its entitlement to summary judgment with respect to each of Plaintiff's claims, and, in response, Plaintiff has failed to raise a dispute of material fact. Defendant's motion for summary judgment is therefore granted, and Plaintiff's motion for summary judgment is denied.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk of the Court shall substitute Steven T. Mnuchin for Secretary of the Treasury Jacob J. Lew as the Defendant in this action, pursuant to Fed. R. Civ. P. 25(d); and it is further

---

[30]     Indeed, Plaintiff's attendance records reflect that he was granted LWOP (among other times) three times during the week ending on October 2, 2010, five times during the week ending on October 9, 2010, and four times during the week ending on November 27, 2010. (Dkt. No. 64, Attach. 16, at GOV_333.)

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 64) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 65) is **DENIED**;

and it is further

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 55) is **DISMISSED** in

its entirety; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant and

close this case.

Dated: August 30, 2017
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge